25 A.3d 240

ROBERT BUCK, PLAINTIFF–APPELLANT, v. JAMES R. HENRY, M.D., DEFENDANT–RESPONDENT, AND SANOFI–AVENTIS AND SANOFI–SYNTHELABO, INC., DEFENDANTS.

Argued January 19, 2011—Decided August 22, 2011.

*Dennis A. Drazin* argued the cause for appellant (*Drazin and Warshaw*, attorneys; *John R. Connelly, Jr.*, on the brief).

*John J. Bannan* argued the cause for respondent (*Reynolds & Drake,* attorneys).

Justice ALBIN delivered the opinion of the Court.

In the early stages of a medical malpractice action, a plaintiff must provide an affidavit from an equivalently credentialed physician attesting "that there exists a reasonable probability that the" defendant physician's treatment "fell outside acceptable professional" standards. *See N.J.S.A.* 2A:53A–27. Under the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, the failure to file an appropriate affidavit within the statutory time limits may result in dismissal of even meritorious cases. *See N.J.S.A.* 2A:53A–29; *Ferreira v. Rancocas Orthopedic Assocs.,* 178 *N.J.* 144, 154, 836 *A.*2d 779 (2003). To staunch the flow of dismissal motions based on claims of non-compliance with the statute, we implemented a simple remedy for all professional malpractice cases. *See Ferreira, supra,* 178 *N.J.* at 154–55, 836 *A.*2d 779. We required that "a case management conference be held within ninety days of the service of an answer" at which the professional defendant would raise "any objections to the adequacy of the affidavit" served by the plaintiff. *Ibid.* For example, if the court determined that an affidavit was deficient, then the plaintiff would "have to the end of the 120–day time period to conform the affidavit to the statutory requirements." *Id.* at 155, 836 *A.*2d 779. We adopted this course because "an ounce of prevention is worth a pound of cure." *Id.* at 147, 836 *A.*2d 779.

In this case, plaintiff Robert Buck filed suit against defendant Dr. James R. Henry, a physician board certified in emergency medicine. Plaintiff alleged that Dr. Henry negligently prescribed to him the sleep medication Ambien. Within the time set by the trial court, plaintiff filed two affidavits, one from a psychiatrist and another from a specialist in emergency medicine. Even though requested by defendant, the trial court did not conduct a conference in accordance with our holding in *Ferreira.*

The trial court dismissed plaintiff's complaint because defendant certified in his motion for summary judgment that he treated plaintiff in his role as a practitioner in family medicine and because plaintiff did not file an affidavit by an equivalent specialist. The Appellate Division affirmed.

■ We now reverse. The purpose of the Affidavit of Merit statute is to weed out frivolous complaints, not to create hidden pitfalls for meritorious ones. The *Ferreira* conference is intended to resolve questions concerning the propriety of an affidavit before the end of the statutory time limit so that otherwise worthy causes of action are not needlessly dismissed. *See id.* at 154–55, 836 *A.*2d 779. In medical malpractice cases, a patient may not know whether the treatment involves a physician's particular specialty or the field of general practice. The confusion that led plaintiff's attorney to file two allegedly non-conforming medical affidavits should have been addressed and resolved at a *Ferreira* conference—not on a summary-judgment motion. We remand to the trial court to conduct a *Ferreira* conference without prejudice to the parties. Going forward, to better ensure that a plaintiff obtains a timely and appropriate affidavit, a defendant physician must indicate in his answer, if he acknowledges treating the patient, the specialty, if any, in which he was involved when rendering treatment.

I.

### Complaint and Answer

In November 2008, plaintiff filed a medical malpractice action against Dr. Henry and a product liability action against Sanofi–Aventis and Sanofi–Synthelabo, Inc. in the Superior Court, Law Division. The complaint alleges that on November 29, 2006, Dr. Henry treated plaintiff for a condition that plaintiff described as "bad sleep."[1] Dr. Henry diagnosed plaintiff as suffering from

---

[1] Because Dr. Henry moved for summary judgment, we view the facts in a light most favorable to plaintiff. *See Kieffer v. Best Buy*, 205 *N.J.* 213, 217 n. 1,

mild depression and insomnia and prescribed Zoloft, an anti-depressant, and Ambien, a sleep aid. Almost three weeks later, after taking Ambien one evening, plaintiff fell asleep while inspecting a gun that he had owned for decades. Plaintiff was awakened by what he believed was a telephone ringing, but had forgotten that the gun was in his right hand. He reached for the receiver with his left hand, somehow causing "the barrel of the gun to enter his mouth and discharge." As a result of the gunshot wound, plaintiff suffered permanent physical injuries, including "a loss of vision and other disabilities" that rendered him unable to work.

Plaintiff alleges that Dr. Henry failed to properly diagnose and treat him and, by prescribing Ambien, "failed to exercise reasonable skill and care as is usually exercised by ... other medical practitioners in similar circumstances." Plaintiff claims that Sanofi–Aventis and Sanofi–Synthelabo, the manufacturer and distributor of Ambien, placed Ambien into the marketplace even though the sleep-aid drug "was not reasonably fit, suitable or safe for its intended purpose" and without providing "adequate warnings or instructions concerning [its] potential to cause a severe and life threatening reaction."[2]

On January 21, 2009, Dr. Henry answered the complaint, denying that he deviated from the accepted standard of medical care or was the proximate cause of plaintiff's injuries, and asserting "all defenses available under the Affidavit of Merit Statute, *N.J.S.A.* 2A:53A–26, et seq."

### Affidavits of Merit

On March 26, 2009, plaintiff forwarded an affidavit of merit signed by Dr. Larry Kirstein, a New York licensed psychiatrist,

---

14 *A.3d* 737 (2011) (citation omitted); *R.* 4:46–2(c). The record is rather sparse, consisting primarily of the complaint and answer, affidavits of merit, and a certification by Dr. Henry.

[2] Sanofi–Aventis and Sanofi–Synthelabo, Inc. are not involved in the appeal before us.

who concluded that Dr. Henry's treatment of plaintiff "fell outside acceptable professional" standards. On April 3, 2009, Dr. Henry's attorney wrote to plaintiff's counsel that Dr. Kirstein was "not qualified to offer an Affidavit of Merit against [Dr. Henry], who was obviously engaged as a family practitioner at the time of the events giving rise to this suit." [3] In his letter, the defense attorney added that he had made a request of the trial court that a *Ferreira* conference be held.

On April 7, 2009, the trial court inadvertently issued an order that "[a]ll counsel have confirmed that all issues involving the Affidavit of Merit statute have been addressed appropriately and there is no need for a [*Ferreira*] conference to be scheduled before the pre-trial judge." [4]

On May 1, 2009, the trial court granted plaintiff's motion to extend the period for filing an affidavit of merit for an additional sixty days, from March 26 to May 25, 2009. Evidently, plaintiff's attorney became aware that Dr. Henry was board certified in emergency medicine.[5] According to the website of the New

---

[3] According to the American Board of Medical Specialties, a family practitioner "is concerned with the total health care of the individual and the family and is trained to diagnose and treat a wide variety of ailments in patients of all ages." American Board of Medical Specialties, About Physician Specialties: Family Medicine, http://www.abms.org/Who_We_Help/Consumers/About_Physician_Specialties/family.aspx (last visited July 15, 2011). Subject to additional training and examination, a family physician may further practice in one of five subspecialties, one of which is sleep medicine. *Ibid.*

[4] Although plaintiff's attorney received this order, he apparently never forwarded it to Dr. Henry's attorney. This order came to light after oral argument before this Court. On February 7, 2011, the trial court vacated the April 7, 2009 order pursuant to *Rule* 1:13–1 on the basis that it was issued "prematurely and as a result of a clerical error." *See R.* 1:13–1 ("Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight and omission may at any time be corrected by the court on its own initiative or on the motion of any party, and on such notice and terms as the court directs, notwithstanding the pendency of an appeal.").

[5] According to the American Board of Medical Specialties, emergency medicine

Jersey Division of Consumer Affairs, Dr. Henry was certified by the American Board of Emergency Medicine in 1988 and was recertified in 1998.[6] That Dr. Henry was board certified in emergency medicine at the time he treated plaintiff is not in dispute. The Consumer Affairs website also listed that Dr. Henry graduated from the University of Minnesota Medical School in 1978 and attended Fairview University Medical Center through June 30, 1980, where he obtained a "[s]pecialty" in "FAMILY PRACTICE." Dr. Henry was never board certified in family medicine, and the website did not indicate that he was currently practicing in the field of family medicine.

On May 22, plaintiff forwarded his second affidavit of merit, this one signed by Dr. Joshua Kosowsky, a Massachusetts physician specializing in emergency medicine. He too determined that Dr. Henry breached acceptable professional standards of treatment.

The trial court never conducted a *Ferreira* conference, nor did the parties ever waive one.

### Summary Judgment

Less than three weeks after plaintiff filed his second affidavit of merit, Dr. Henry moved for summary judgment, claiming that the affidavits from physicians specializing in psychiatry and emergen-

---

focuses on the immediate decision making and action necessary to prevent death *or any further disability* both *in the pre-hospital setting* by directing emergency medical technicians and in the emergency department. The emergency physician provides immediate recognition, evaluation, care, stabilization and disposition of a generally diversified population of adult and pediatric patients in response to acute illness and injury.
[American Board of Medical Specialties, About Physician Specialties: Emergency Medicine, http://www.abms.org/Who_We_Help/Consumers/About_Physician_Specialties/emergency.aspx (last visited July 15, 2011) (emphasis added).]

[6] This professional profile of Dr. Henry was made public pursuant to the New Jersey Health Care Consumer Information Act. *See L.* 2003, *c. 96.* In accordance with the Act, the Division of Consumer Affairs within the Department of Law and Public Safety is required to collect and make public information on all physicians, podiatrists, and optometrists that are licensed to practice in the State. *N.J.S.A.* 45:9–22.22.

cy medicine were not from equivalent specialists. In a certification in support of his summary-judgment motion, Dr. Henry averred that he "practiced in the specialty of family practice recognized by the American Board of Medical Specialties," and that the "care or treatment" that he rendered to plaintiff "involve[d] [his] specialty in family practice." Dr. Henry maintained that because he was a specialist in family medicine and because plaintiff did not submit an affidavit of merit from someone practicing in that specialty, the Affidavit of Merit statute compelled that the complaint be dismissed.

Plaintiff's attorney explained that he filed an affidavit from a psychiatrist because treating a patient for insomnia fell within the general practice of medicine. He argued that one cannot be a "specialist" in family medicine absent board certification. He also stated that he filed an affidavit from an emergency-medicine practitioner because he relied on Dr. Henry's board certification in emergency medicine.

At oral argument, the trial court concluded that plaintiff was required to obtain an affidavit of merit from a specialist practicing the same specialty as Dr. Henry. It found that family medicine is a recognized specialty and that Dr. Henry was a family-medicine specialist based on his "undisputed Certification." Because the court determined that Dr. Henry was not a general practitioner, the affidavit from a specialist in psychiatry did not conform to the statute. It also found that the treatment of plaintiff did not involve emergency medicine. Therefore plaintiff's other expert affidavit did not meet the statutory requirement for a valid affidavit of merit. The court never explained why it did not sort these issues out weeks earlier at a *Ferreira* conference. By written order, the court granted summary judgment in favor of Dr. Henry and dismissed plaintiff's case with prejudice.[7]

---

[7] This grant of summary judgment did not apply to the pharmaceutical defendants.

*Appellate Division*

The Appellate Division granted plaintiff's motion for leave to appeal and affirmed in an unpublished opinion. The appellate panel noted that, in medical malpractice cases, the Affidavit of Merit statute clearly requires an affidavit "from a physician who 'specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties[,] . . . as the party against whom . . . the testimony is offered.' " (Quoting *N.J.S.A.* 2A:53A–41(a)). The panel accepted that Dr. Henry is a family-medicine specialist, as evidenced by his certification, and found that "Dr. Henry need not be board-certified in family medicine to declare himself a [family-medicine] specialist." It also concluded that it had no reason to believe "that the treatment at issue here did not concern the practice of family medicine." Because plaintiff's treatment "was not related to emergency care," the panel determined that "Dr. Henry's board certification in emergency medicine [was] irrelevant." For that reason, the panel found that the affidavit from plaintiff's emergency-medicine specialist did not satisfy the statute. In rejecting plaintiff's affidavit from a psychiatrist, the panel also dismissed the claim that Dr. Henry was a "general practitioner" when treating plaintiff or that "the title of family practitioner is synonymous with a 'general practitioner.' " The Appellate Division never discussed the trial court's failure to conduct a *Ferreira* conference.

We granted plaintiff's motion for leave to appeal. *Buck v. Henry*, 203 *N.J.* 432, 3 *A.*3d 1223 (2010).

## II.

We first discuss the Affidavit of Merit statute, particularly as it applies to medical malpractice cases, and then address the role of the *Ferreira* conference in effectuating that statute.

## A.

The Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, requires that a plaintiff who files a "malpractice or negligence

[action against] a licensed person in his profession or occupation" must submit "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." *N.J.S.A.* 2A:53A–27. The affidavit is due within 60 days of the defendant's answer, but may be filed within 120 days "upon a finding of good cause." *Ibid.; see Burns v. Belafsky,* 166 *N.J.* 466, 475–77, 766 *A.*2d 1095 (2001) (stating that motion to extend deadline may be made at any point within 120–day period). In actions alleging medical malpractice, the person providing the affidavit must meet the requirements of *N.J.S.A.* 2A:53A–41, a provision of the New Jersey Medical Care Access and Responsibility and Patients First Act, which was enacted in 2004. *See L.* 2004, *c.* 17; *N.J.S.A.* 2A:53A–27.

 The basic principle behind *N.J.S.A.* 2A:53A–41 is that "the challenging expert" who executes an affidavit of merit in a medical malpractice case, generally, should "be equivalently-qualified to the defendant" physician. *Ryan v. Renny,* 203 *N.J.* 37, 52, 999 *A.*2d 427 (2010). The statute sets forth three distinct categories embodying this kind-for-kind rule: (1) those who are specialists in a field recognized by the American Board of Medical Specialties (ABMS) but who are not board certified in that specialty; (2) those who are specialists in a field recognized by the ABMS and who are board certified in that specialty; and (3) those who are "general practitioners." *See N.J.S.A.* 2A:53A–41(a), (b).

 *N.J.S.A.* 2A:53A–41(a) addresses the first two categories:

In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of [*N.J.S.A.* 2A:53A–26 to –29] on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:

a. *If* the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association *and* the care or treatment at issue

involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party against whom or on whose behalf the testimony is offered, and *if* the person against whom or on whose behalf the testimony is being offered is board certified *and* the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall [meet additional qualifications].

[ (Emphasis added).]

Courts are granted authority to waive the specialty qualification requirements under specifically defined circumstances, but only "upon motion by the party seeking a waiver." *See N.J.S.A.* 2A:53A–41(c); *accord Ryan, supra,* 203 *N.J.* at 53, 999 *A.*2d 427.

■ Like the trial court and the Appellate Division, we reject plaintiff's argument that *N.J.S.A.* 2A:53A–41(a) only recognizes a specialist who is board certified. Although the statute is far from a model of clarity, such an interpretation would nullify the beginning portion of the statute. *See In re Attorney Gen.'s "Directive on Exit Polling: Media & Non–Partisan Pub. Interest Groups",* 200 *N.J.* 283, 297–98, 981 *A.*2d 64 (2009) ("We must presume that every word in a statute has meaning and is not mere surplusage, and therefore we must give those words effect and not render them a nullity." (citation omitted)). Part of the statute explicitly speaks about a non-board-certified specialist or subspecialist offering testimony when "the care or treatment at issue involves that specialty or subspecialty." *See N.J.S.A.* 2A:53A–41(a). Family medicine is a specialty recognized by the ABMS. One can practice family medicine without board certification. Thus, if Dr. Henry was a family-medicine practitioner and his "care or treatment" of plaintiff involved family medicine, then in pursuing a medical malpractice action plaintiff must find a like-qualified expert to proffer an affidavit challenging his treatment. If Dr. Henry was not providing treatment as a practitioner of family medicine, or in some other specialty, Dr. Henry was acting as a general practitioner in prescribing Ambien to treat plaintiff's sleep difficulties.

*N.J.S.A.* 2A:53A–41(b) addresses when the affidavit of a general practitioner will suffice:

b. If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to:

(1) active clinical practice as a general practitioner; or active clinical practice that encompasses the medical condition, or that includes performance of the procedure, that is the basis of the claim or action; or

(2) the instruction of students in an accredited medical school, health professional school, or accredited residency or clinical research program in the same health care profession in which the party against whom or on whose behalf the testimony is licensed; or

(3) both.

A "general practitioner" is defined by what he is not—he is not a "specialist or subspecialist." *See N.J.S.A.* 2A:53A–41.

 Under *N.J.S.A.* 2A:53A–41, the first inquiry must be whether a physician is a specialist or general practitioner. If the physician is a specialist, then the second inquiry must be whether the treatment that is the basis of the malpractice action "involves" the physician's specialty. When the treatment "involves" the physician's specialty the equivalency requirements apply, otherwise the specialist is subject to the same affidavit requirements as if he were a general practitioner. *See ibid.*[8] A physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an affidavit of merit from a physician specializing in either area will suffice. *See ibid.* (stating that singular "person" or "witness" must provide affidavit). In the case of a general practitioner, an affidavit from another general practitioner or from a physician experienced with the treatment performed will satisfy the statute. *See ibid.*

---

[8] A physician board certified in a specialty can offer an affidavit in a case involving a physician not board certified in that specialty. But under the equivalency doctrine, the reverse is not permitted. *See N.J.S.A.* 2A:53A–41.

The 2004 amendments to the Affidavit of Merit statute added an extra level of complexity to the obligations placed on plaintiffs' attorneys and therefore increased the potential for the "wrong" affidavit being filed within the 120–day period. This case presents a perfect example of the pitfalls facing a plaintiff's attorney and of the need for timely *Ferreira* conferences.

## B.

Within the time fixed by the statute, plaintiff in this case filed an affidavit of merit from a psychiatrist, apparently acting under the presumption that when Dr. Henry treated him and prescribed Ambien, Dr. Henry was not acting within the scope of a specialty, such as family medicine. Immediately following defendant's answer, there was no discovery or easy means for plaintiff to determine otherwise. If Dr. Henry was a general practitioner when he prescribed Ambien, then an affidavit from a psychiatrist would meet the requirements of *N.J.S.A.* 2A:53A–41 (b).

Moreover, it was not illogical that plaintiff would proffer a backup affidavit from a specialist in emergency medicine. Dr. Henry was board certified in emergency medicine at the time he treated plaintiff. If Dr. Henry followed the practice of many other physicians, proof of his board certification would be on the wall of his medical office or on his stationery. The website of the New Jersey Division of Consumer Affairs listed Dr. Henry as certified by the American Board of Emergency Medicine. One can practice emergency medicine outside the confines of a hospital's emergency room. Indeed, according to the ABMS, the practice of emergency medicine includes taking action to prevent a "disability" in a "pre-hospital setting." *See supra* note 5. Nothing in this record suggests that a practitioner of emergency medicine is not qualified to prescribe sleep medication.

Not until the summary-judgment motion did plaintiff have the benefit of Dr. Henry's certification, in which he averred that he was a family-medicine practitioner when he treated plaintiff and that the treatment (prescribing Ambien) involved that specialty.

It was self-evident to the summary-judgment court and the Appellate Division that Dr. Henry practiced family medicine because they had his certification. That certification, however, was not in the hands of plaintiff while the Affidavit of Merit statute clock was ticking.

It is true that defense counsel forwarded to plaintiff's attorney a letter stating that Dr. Henry "was obviously engaged as a family practitioner at the time of the events giving rise to this suit." But the letter does not explain why it was so obvious that Dr. Henry was a family practitioner. Caution should have prompted plaintiff's attorney at that point to obtain an affidavit from a specialist in family medicine. But nothing in this record intimates that plaintiff was not acting in good faith. Most importantly, the trial court's discussion concerning the appropriateness of the affidavits proffered by plaintiff should have occurred weeks earlier at the never-held *Ferreira* conference. The *Ferreira* conference likely would have led to the filing of a judicially acceptable affidavit and obviated the need for the summary-judgment motion that led to the dismissal of plaintiff's cause of action.

This case is a reminder of the important role that *Ferreira* conferences play in ensuring that the Affidavit of Merit statute fulfills its objective of weeding out unmeritorious cases rather than worthy ones.

## C.

"The core purpose underlying the [Affidavit of Merit] statute is 'to require plaintiffs ... to make a threshold showing that their claim is meritorious,'" so that lawsuits lacking substance can be dismissed "'at an early stage of litigation.'" *Ryan, supra,* 203 *N.J.* at 51, 999 *A.*2d 427 (quotation omitted); *accord Paragon Contractors, Inc. v. Peachtree Condo. Ass'n,* 202 *N.J.* 415, 421, 997 *A.*2d 982 (2010). "[T]here is no legislative interest in barring meritorious claims brought in good faith[.]" *Ferreira, supra,* 178 *N.J.* at 150–51, 836 *A.*2d 779 (quoting *Galik v. Clara Maass Med. Ctr.,* 167 *N.J.* 341, 359, 771 *A.*2d 1141 (2001)). Indeed, the Legislature did not intend "to 'create a minefield of

hyper-technicalities in order to doom innocent litigants possessing meritorious claims.' " *Ryan, supra,* 203 *N.J.* at 51, 999 *A.*2d 427 (quotation omitted). "The Affidavit of Merit statute was intended to flush out insubstantial and meritless claims that have created a burden on innocent litigants and detracted from the many legitimate claims that require the resources of our civil justice system." *Ferreira, supra,* 178 *N.J.* at 154, 836 *A.*2d 779.

To ensure that challenges to affidavits of merit do not become "sideshows" overwhelming our civil justice system, *ibid.,* we crafted a practical remedy to prevent exactly what occurred in this case. In *Ferreira,* we required that a "case management conference be held within ninety days of the service of an answer in all malpractice actions." *Id.* at 154, 836 *A.*2d 779. At that conference, a "defendant [is] required to advise the court whether he has any objections to the adequacy of the affidavit" that has been served on him. *Id.* at 155, 836 *A.*2d 779. If the court determines that an affidavit is deficient, a "plaintiff [has] to the end of the 120–day time period to conform the affidavit to the statutory requirements." *Ibid.* The conference may be cancelled only " 'when the Affidavit of Merit has been provided by plaintiff and all defendants have waived any objections to its adequacy.' " *Paragon Contractors, supra,* 202 *N.J.* at 424, 997 *A.*2d 982 (quoting *Waiver of Affidavit of Merit Conference,* 176 *N.J.L.J.* 1006 (2004)).

When we decided *Ferreira,* we observed that "[t]he painful experience of our affidavit of merit jurisprudence reveals the compelling need for such conferences at an early stage before problems arise." *Ferreira, supra,* 178 *N.J.* at 155, 836 *A.*2d 779. Given the complexity of the amended statute governing affidavits of merit in medical malpractice cases—a statute enacted since *Ferreira*—the need for the conference is even more vital today.

### III.

In this case, the trial court did not conduct a *Ferreira* conference, apparently due to inadvertence. We know that the court mistakenly issued an order stating that "all issues involving

the Affidavit of Merit statute have been addressed appropriately." It appears that plaintiff acted in good faith in filing two affidavits of merit from different specialists, even if the trial court later determined on a summary-judgment motion that they did not conform to the statute. Had the *Ferreira* conference been conducted, plaintiff would have had at least thirty days to correct the deficiency by filing a conforming affidavit.

There are no villains here, but we have a record that bespeaks confusion. This is not a case of a desperate plaintiff unable to find a physician willing to aver to a claim of malpractice. *Cf. Ryan, supra,* 203 *N.J.* at 46, 999 *A.2d* 427 (plaintiff contacted three physicians, each of whom refused to provide affidavit of merit). This is not a case of a plaintiff sleeping on his rights and ignoring statutorily imposed deadlines. *See Paragon Contractors, supra,* 202 *N.J.* at 423, 997 *A.2d* 982 (stating that "attorney's inadvertence in failing to timely file an affidavit will generally result in dismissal with prejudice" (citation omitted)). Rather, this is a case of a plaintiff who has made good-faith attempts to satisfy the statute. In *Ferreira,* we believed that the early case management conference would "permit the Affidavit of Merit statute to fulfill its true purpose—to bring a swift demise to frivolous lawsuits while allowing meritorious ones to have their day in court." *Ferreira, supra,* 178 *N.J.* at 155, 836 *A.2d* 779.

Plaintiff in this case has not forfeited his right to have his day in court. We therefore remand this case back to the trial court to hold the appropriate case management conference and decide anew the adequacy of plaintiff's affidavits of merit. If the affidavits submitted by plaintiff are deemed inadequate under *N.J.S.A.* 2A:53A–41, then plaintiff will have thirty days from the date of the conference to file a proper affidavit. Failure to file the affidavit within that time will result in the dismissal of plaintiff's case with prejudice.[9]

---

[9] Nothing in our opinion prevents plaintiff from submitting an affidavit of merit from a family practitioner before the conference, rendering the entire issue moot.

We add one important caveat that should make more likely the filing of a timely affidavit of merit that conforms to the statute. From this point forward, a physician defending against a malpractice claim (who admits to treating the plaintiff) must include in his answer the field of medicine in which he specialized, if any, and whether his treatment of the plaintiff involved that specialty. In accordance with this directive, we request that the New Jersey Supreme Court Civil Practice Committee propose for our review a change to *Rule* 4:5–3 or 4:5–4—the rules governing answers and affirmative defenses in civil cases.[10]

## IV.

For the reasons given, we reverse the judgment of the Appellate Division, reinstate plaintiff's complaint, and remand to the trial court for a *Ferreira* conference consistent with this opinion.

Justice HOENS, dissenting.

Today, a majority of the Court announces that henceforth defendants in medical malpractice actions must affirmatively announce their area of practice in their first-filed pleading so that plaintiffs might be aided in complying with the obligation imposed upon them by the Legislature, through the enactment of the Affidavit of Merit statute, *N.J.S.A.* 2A:53A–26 to –29, to demonstrate that their claims are meritorious. In doing so, the majority not only transforms the obligation that our Legislature chose to place on plaintiffs into a burden imposed on defendants, but it shifts the onus for demonstrating merit from the party in the best position to know whether the claim has merit onto the party who, by virtue of our system of notice pleading, may have little, if any, knowledge of the allegations.

---

[10] A physician knows the specialty in which he practices; a patient should not be left guessing about it. Requiring a physician to disclose in his answer his medical specialty is hardly an imposition and does not—as the dissent suggests—shift the burden of compliance with the Affidavit of Merit statute from the plaintiff to the defendant.

More surprising, however, is that the majority has chosen as its vehicle for this new requirement a record in which plaintiff had no doubt about defendant's area of specialty, because defendant told plaintiff what his specialized practice area was when alerting him that the first physician who attested to the claim's merit lacked the statutorily-mandated type of expertise. That plaintiff ignored that advice and proceeded at his peril, that the statute therefore deems this Court to be without any authority to extend further plaintiff's time to comply, and that the claim by operation of law must fail are all ignored as the majority searches for a way to thwart the will of the Legislature by creating a new avenue to grant plaintiff relief from complying with the Affidavit of Merit statute.

Because the meaning of the Affidavit of Merit statute is clear, because its application to this matter demands that this complaint be dismissed with prejudice, *N.J.S.A.* 2A:53A–29, because the majority's newly-announced rules engraft requirements onto the statute that defy the Legislature's intent, and because the record demonstrates that plaintiff actually had all of the information that the majority suggests would have helped him comply with his statutory responsibility to demonstrate his claim's merit, I respectfully dissent.

## I.

The Affidavit of Merit statute was enacted in 1995 with the goal of weeding out frivolous claims against certain professionals, including physicians. *See Galik v. Clara Maass Med. Ctr.*, 167 *N.J.* 341, 350, 771 *A.*2d 1141 (2001); *Burns v. Belafsky*, 166 *N.J.* 466, 474–75, 766 *A.*2d 1095 (2001). It "require[s] plaintiffs . . . to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily . . . [can] be identified at an early stage of litigation." *In re Petition of Hall*, 147 *N.J.* 379, 391, 688 *A.*2d 81 (1997) (citing Peter Verniero, Chief Counsel to the Governor, *Report to the Governor on the Subject of Tort Reform* (Sept. 13, 1994)).

The statute created a simple mechanism to ensure that claims meet this threshold by requiring plaintiffs who sue based on assertions of professional negligence or malpractice to serve an affidavit by a like professional attesting to the merit of the claim raised in the complaint. *N.J.S.A.* 2A:53A–27. The statute includes a fixed timeframe for service of the Affidavit of Merit, *ibid.* (requiring that affidavit be served within sixty days of filing of answer to complaint), and sharply limits the authority of the courts to extend that time, *ibid.* ("The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit. . . ."). Finally, the statute deems the failure to serve the required Affidavit of Merit to be the "failure to state a cause of action," *N.J.S.A.* 2A:53A–29, the result of which ordinarily is dismissal with prejudice, *Paragon Contractors, Inc. v. Peachtree Condo. Ass'n,* 202 *N.J.* 415, 422, 997 *A.*2d 982 (2010); *see Ferreira v. Rancocas Orthopedic Assocs.,* 178 *N.J.* 144, 151, 836 *A.*2d 779 (2003) (recognizing applicability of equitable remedies in extraordinary circumstances coupled with substantial compliance).

The statute was amended in 2004 as part of a comprehensive tort reform initiative, *see N.J. State Bar Ass'n v. State,* 387 *N.J.Super.* 24, 36, 902 *A.*2d 944 (App.Div.) (describing legislative history), *certif. denied,* 188 *N.J.* 491, 909 *A.*2d 726 (2006), at which time the Legislature added a more detailed set of requirements that relate specifically to claims of medical malpractice, *see Ryan v. Renny,* 203 *N.J.* 37, 51–53, 999 *A.*2d 427 (2010) (explaining revised requirements); *N.J.S.A.* 2A:53A–41. The 2004 amendments created a hierarchy of relevant kinds and categories of practice engaged in by medical professionals and required that the professional providing the Affidavit of Merit match the level of expertise of the defendant. *N.J.S.A.* 2A:53A–41. In this way, the statute continues to express the Legislature's strong preference for "requiring the challenging expert to be equivalently-qualified to the defendant," *Ryan, supra,* 203 *N.J.* at 52, 999 *A.*2d 427, in an obvious effort to ensure that both are approaching the matter of whether the claims are meritorious with the same level of exper-

tise and, by extension, that defendant's acts are being judged in accordance with the appropriate standard of care.

Relevant to this appeal, the statute now differentiates between those engaged as general practitioners and those practicing as specialists, *compare N.J.S.A.* 2A:53A–41b (fixing standards relating to general practitioners), *with N.J.S.A.* 2A:53A–41a (establishing standards relating to physicians practicing in recognized specialty and physicians attaining board certification), and it differentiates between those who are simply practicing in a recognized area of specialty and those who are board certified in a specialty, *see N.J.S.A.* 2A:53A–41a. In clear terms, the statute demands that if the defendant physician practices in a recognized specialty and if the care that is in issue falls within that specialty, the Affidavit of Merit must likewise be provided by one who practices within that specialty. *Ibid.* Further, if the defendant physician is board certified in that specialty, the affiant likewise must be board certified. *Ibid.*

## II.

In the early years following the Legislature's enactment of the Affidavit of Merit statute, this Court was persuaded that there might be circumstances in which the "rigid application of the statute ... would result in the dismissal of an otherwise meritorious cause of action." *Ferreira, supra,* 178 *N.J.* at 147, 836 *A.*2d 779. Apparently believing that lawyers representing plaintiffs with malpractice claims were confused about the statute's meaning and operation and that they therefore needed the assistance of the courts to avoid dismissal of meritorious matters, this Court decided that a case management conference should be held in every such case. *See ibid.; see also Knorr v. Smeal,* 178 *N.J.* 169, 179–81, 836 *A.*2d 794 (2003) (concluding that defendant who inordinately delayed moving for relief based on plaintiff's failure to comply with Affidavit of Merit statute was barred from entitlement to dismissal by equitable estoppel and laches). The purpose of the conference was to ensure that plaintiffs would have the benefit of

the court's guidance about the statute and its requirements so that they would be able to serve a timely and appropriate Affidavit of Merit. *See Ferreira, supra,* 178 *N.J.* at 154–55, 836 *A.*2d 779.

Although this Court directed that such conferences be held, many practitioners waive them, presumably because the statute's requirements have become so familiar that plaintiffs' counsel are not in need of reminders about the obligations that the statute so plainly imposes upon them. As a consequence, we have not only recognized that the parties have the right to waive the conference, but we also have held that, even in the absence of a waiver, the court's failure to convene the conference cannot operate to toll the statutory deadlines. *See Paragon, supra,* 202 *N.J.* at 425–26, 997 *A.*2d 982 (affording limited relief to litigants based on continuing confusion).

There can be little doubt that this Court's holding that the failure to convene a conference cannot operate as "an overlay on the statute," *id.* at 419, 997 *A.*2d 982, was inevitable, because the language of the statute is mandatory. It creates confined time-frames for compliance, permits courts only a limited power to extend the time to comply, and deems failure to comply to be a failure to state a claim that requires dismissal with prejudice. *N.J.S.A.* 2A:53A–27, –29. Through those three pronouncements, the Legislature spoke in a manner that leaves no option for tolling.

Moreover, the decision in *Paragon* was inevitable because the problem that the *Ferreira* conference was apparently designed to remedy, that is, some lack of familiarity with the meaning, intent, and consequences of the failure to comply with the statute, no longer has any basis. It is one thing to decide, shortly after a statute is enacted, that lawyers are unaware of its existence or unfamiliar with its requirements, but is a far different proposition to continue to presume lawyers do not know about its existence or understand its provisions fifteen years later. On the contrary, our observation in *Paragon* that practitioners routinely waive the conference proceeded from our recognition that they do so be-cause the conference is unnecessary and burdensome to both

litigants and the courts. *See Paragon, supra,* 202 *N.J.* at 424, 997 *A.*2d 982.

If, as we held in *Paragon,* the failure to hold the conference cannot toll the time to file the Affidavit of Merit, *id.* at 419, 997 *A.*2d 982, and if, as the statute itself makes plain, there is no other remedy available to a litigant based on the court's failure to hold the conference, *N.J.S.A.* 2A:53A–29 (mandating dismissal for failure to comply), the only logical result is that the conference has become a nullity. Rather than recognize that the plain language of the statute demands compliance and rather than applauding the increased sophistication of the bar about the meaning and intent of the statute, however, the majority doggedly clings to the notion that forcing attendance at conferences and creating new burdens on parties other than those targeted by the Legislature will somehow save meritorious cases from dismissal.

This appeal perfectly illustrates the two reasons why this cannot be so. First, the essential lynchpin for the majority's new approach is the notion that plaintiff would have been able to comply with the statutory requirement had there only been a conference. That assertion, however, ignores both the fact that plaintiff has never argued that a conference would have mattered and the fact that plaintiff, knowing that the conference had been cancelled because the parties alerted the court that it was unnecessary, never sought to have it rescheduled.

Second, the record demonstrates that plaintiff served two timely Affidavits of Merit, neither one of which was signed by a physician qualified to opine on the treatment offered by defendant. The first, issued by a psychiatrist, was inappropriate because defendant does not practice in that specialty and did not provide plaintiff with treatment falling within that field. When that affidavit was received, defendant did not seek some unfair advantage by waiting for the time allotted under the statute to lapse. Instead, defendant immediately alerted plaintiff about the deficiency and advised that his area of specialty was family practice. Notwithstanding that truthful and entirely unrebutted representa-

tion, plaintiff ignored him and, two days before the end of the extended time permitted by the statute, served the second Affidavit of Merit, signed by a specialist in emergency medicine.

Although the majority suggests that the absence of a conference left plaintiff without the information needed to correctly identify defendant's area of specialty, that is belied by defendant's prompt notice to plaintiff, well within the time allotted for service of the Affidavit of Merit, that the psychiatrist's report did not meet the statute's requirements and that he was engaged in family practice. In light of that clear and correct advice, a conference with the court could not have been of benefit to plaintiff.

The majority, while failing to explain how a conference could have made any difference, instead engages in irrelevant forays outside of the record in an effort to find a basis on which to intervene where the statute precludes relief. It does so by citing to internet searches as support for its views about the training of physicians, *ante* at 385–87 (25 *A*.3d at 244–45 & n. 3, n. 5), and relies on an unwarranted supposition about diplomas it thinks defendant might have had hanging on his office walls touting his board certification in emergency medicine, *ante* at 392 (25 *A*.3d at 248–49), a specialty not relevant to any issue in this appeal save for plaintiff's decision to use a specialist in that field for his second Affidavit of Merit.

All of those efforts, however, spring directly from the majority's refusal to recognize that the statute bars the relief the Court seeks to make available. The latest date on which the Affidavit of Merit could have been served was May 25, 2009. Plaintiff, in full knowledge of the fact that defendant held himself out to be a specialist in family practice, and in full knowledge that he was not consulted by plaintiff as an emergency room doctor or as a specialist in emergency medicine, elected to serve, on virtually the last possible day under the statute, an Affidavit of Merit signed by one not qualified under the relevant provision of the statute. That failure not only requires dismissal with prejudice, but it is beyond the power of this Court to cure.

There is nothing in this record that is the least bit unfair about that plain reading of the statute. Nor is there anything in this Court's original effort to create a safety net for plaintiffs through the creation of the conference, *see Ferreira, supra,* 178 *N.J.* at 154–55, 836 *A.*2d 779, that alters the calculus here. As we have recognized, the failure to hold the conference does not toll the statute's operation, *see Paragon, supra,* 202 *N.J.* at 426, 997 *A.*2d 982, and in any event in this case, that failing did not matter. Even the majority's criticism of the trial court for what is now described as an inadvertently-issued order about waiver of the conference, *see ante* at 385 (25 *A.*3d at 244 & n. 4) (relying on post-oral argument order vacating April 2007 order), is of no consequence, because plaintiff had both the only copy of that order and complete information about defendant's field of practice when he chose to proceed with an Affidavit of Merit that did not comply with the statute.

## III.

Notwithstanding the clear language of the statute mandating that this matter be dismissed, the majority today essentially ignores that necessary consequence and embarks on a new approach. It reaffirms its insistence that trial courts convene irrelevant and burdensome conferences and it announces that henceforth, all physician defendants who are faced with malpractice claims must affirmatively state their field of medicine as part of their answer to the complaint, *ante* at 395–96 (25 *A.*3d at 250–51).

No matter that plaintiff knowingly waived the conference; no matter that the conference would have made no difference in this case; no matter that this defendant in fact told plaintiff what his field was and that plaintiff ignored him; no matter that the statute mandates that the complaint is now deemed to have failed to state a claim; no matter that heretofore only affirmative defenses have been required to be set forth in answers, *see R.* 4:6–2, the majority

simply creates new requirements and presumes that this complaint should proceed.

The majority's distaste for the efforts of our Legislature to stem the tide of frivolous litigation through the Affidavit of Merit statute is clear and its continuing preference for adding burdens on the trial courts and on defendants in place of enforcement of the Legislature's plain language are neither views nor approaches that I share.

I therefore respectfully dissent.

*For reversal, reinstatement and remandment*—Chief Justice RABNER, Justices LONG, LaVECCHIA, and ALBIN—4.

*For affirmance*—Justices RIVERA–SOTO and HOENS—2.