**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2723-24

TODD B. GLASSMAN, as Executor
of the ESTATE OF JENNIFER K.
COLLUM-GLASSMAN, deceased,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

JUANITO'S INC., KLE PROPERTIES,
LLC, CHARLES W. FARRELL, M.D.,
NATACHA FIELD, R.N., and
CONSTANCE MACKAY, R.N.,

      Defendants,

and

STEVEN P. FRIEDEL, M.D., LON
WEINER, M.D., TANYA GOODEN,
R.N., and HACKENSACK MERIDIAN
HEALTH d/b/a RIVERVIEW
MEDICAL CENTER,

      Defendants-Respondents,

and

ANURADHA THALASILA, M.D.,

Defendant-Appellant/
Cross-Respondent.

_____

Argued May 21, 2026 – Decided June 4, 2026

Before Judges Mawla, Marczyk, and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2383-18.

Michael R. Ricciardulli argued the cause for appellant/cross-respondent (Ruprecht Hart Ricciardulli & Sherman, LLP, attorneys; Michael R. Ricciardulli, of counsel and on the briefs; Jessica J. Mahony, on the briefs).

Christina Vassiliou Harvey argued the cause for respondent/cross-appellant (Lomurro Munson, LLC, attorneys; Christina Vassiliou Harvey, of counsel and on the briefs).

Ernest P. Fronzuto argued the cause for amicus curiae New Jersey Association for Justice (Fronzuto Law Group, attorneys; Ernest P. Fronzuto, of counsel and on the brief; Casey Anne Cordes, on the brief).

PER CURIAM

This is a medical malpractice case involving the treatment of decedent Jennifer K. Collum-Glassman, who was hospitalized for a fractured ankle on March 25, 2017, underwent an operation on March 30, 2017, and was discharged on April 19, 2017. On April 26, 2017, she suffered a pulmonary embolism and

2

died. In his complaint, plaintiff Todd B. Glassman, the executor of decedent's estate, alleges she died because of defendant Anuradha Thalasila, M.D.'s negligence.

We granted defendant and plaintiff leave to appeal and cross-appeal, respectively, from a February 28, 2025 order entered following a Rule 104 hearing. Having considered the parties' arguments, we reverse and remand on the cross-appeal and dismiss the appeal as moot for the reasons expressed in this opinion.

Relevant to the issues raised on this appeal, defendant's pleadings averred she was "board[-]certified in internal medicine and practiced in this field at the time of her care and treatment" of decedent. Plaintiff served an expert report from Craig C. Hofmeister, M.D., who opined defendant deviated from the applicable standard of care in her treatment of decedent. The report referred to defendant as "a hospitalist trained in internal medicine and hematology." Dr. Hofmeister opined defendant should have been aware decedent was at "enhanced risk" for "venous thromboembolism" and administered "pharmacologic prophylaxis" until she regained "adequate mobility" following her injury.

Dr. Hofmeister's report stated he was "currently board[-]certified with the American Board of Internal Medicine in the subspecialty of Hematology." His curriculum vitae indicated the following board certifications: American Board of Internal Medicine 2002, 2012-present; Hematology 2005, 2017-present; and Oncology 2006-2016. At the time of decedent's injury, Dr. Hofmeister was an Associate Professor of Clinical Internal Medicine, Division of Hematology, at The Ohio State University. In 2018, he became an Associate Professor of Hematology in the Department of Hematology and Medical Oncology at Emory University School of Medicine.

Defendant moved to bar Dr. Hofmeister from testifying, arguing he was a board-certified hematologist, not an internist, and therefore could not opine as to the standard of care. In opposition, plaintiff submitted a certification from Dr. Hofmeister explaining: he had completed a three-year residency in internal medicine; his board certification and re-certification in internal medicine; he "was board[ ]certified in internal medicine at the time of the events in [this] matter"; "in 2016 through 2017, the majority of [his] professional time was spent as an internist diagnosing and treating . . . patients across the spectrum of internal medicine diseases"; his clinical focus was "in hematology, which is a subspecialty . . . of internal medicine"; and throughout this time he "provided

4

internal medicine care in addition to focused hematology care to [his] hematology patients."

The trial court denied defendant's initial motion and the parties conducted discovery. At deposition, Dr. Hofmeister acknowledged internal medicine had many subspecialities, including hematology. He explained internal medicine residents had to be familiar with all the subspecialities. Thereafter, some physicians could choose to specialize in a subspeciality or become internists without a subspeciality. Dr. Hofmeister chose to specialize in hematology.

Defendant renewed her motion. The court denied it and ordered a 104 hearing to determine whether Dr. Hofmeister had sufficient expertise to testify against defendant.

At the hearing, Dr. Hofmeister testified he completed a three-year residency in internal medicine and was board certified in internal medicine between 2002 and 2022. He practiced internal medicine and treated patients during 2016 and through July 2017; the year preceding the events in this case. The doctor explained he treated patients for conditions beyond hematologic issues, including hypertension, diabetes, infectious diseases, skin problems, and pain. He reiterated, during the relevant time-period, he was an internist diagnosing and treating his patients across the gamut of internal medicine. Dr.

Hofmeister testified all hematologists are internal medicine doctors. He acknowledged he was not a general internist, had not worked on a hospital floor as one, and was not a hospitalist.

Following the hearing, the trial court invited the parties to submit written summations. Defendant argued Dr. Hofmeister could not render an opinion as to the standard of care because he was a hematologist, whereas she was an internal medicine specialist. She also contended she was a hospitalist, which distinguished her expertise from Dr. Hofmeister. Plaintiff asserted the evidence showed Dr. Hofmeister was board certified in internal medicine and was practicing as an internist during the year preceding the lawsuit. Although defendant held herself out as an internist, her professional background revealed she was a general practitioner.

The trial court rejected defendant's assertion she was a hospitalist because it could not find this designation "listed as any form of specialty or sub-specialty under either the American Board of Medical Specialties [(ABMS)], or the American Osteopathic Association." Therefore, no designation as a hospitalist was "required by Dr. Hofmeister . . . to opine as to the standard of care rendered by [d]efendant."

6

The court concluded even though Dr. Hofmeister retained his board certification in internal medicine, "without question" his testimony made it clear he "[wa]s a specialist in hematology and not internal medicine." It was also clear "he considered himself to be a hematologist and not an internist" and "the only time he saw patients for non-hematologic issues [was] when they also had hematologic issues." He had previously served "as an expert in hematologic cases and believed this case was one dealing with bleeding and clotting."

The court was convinced defendant is a general internist. There was "also no doubt . . . Dr. Hofmeister does not hold himself out as an internist." As a result, the court concluded Dr. Hofmeister was not qualified to render standard of care opinions against defendant. Although Dr. Hofmeister remained board certified in internal medicine, the court was "concerned [his] training in the area of hematology would undermine the policy underlying the [kind-for-kind] rule for a physician with such specialized training to opine regarding the standard of care applicable to a physician practicing in the more generalized specialty."

However, the court declined to grant defendant summary judgment, reasoning it would be "too severe a penalty to be imposed upon a plaintiff who with good reason believed that their [b]oard-[c]ertified expert in internal medicine was qualified to render an opinion against the defendant." Instead, the

7

court granted plaintiff an opportunity to retain a new expert and defendant the ability to respond and take further discovery.

On March 31, 2025, the trial court stayed its February 2025 order pending appeal. After we granted the parties leave to appeal, we later granted the New Jersey Association for Justice's (NJAJ) motion to appear as amicus curiae.

I.

On the cross-appeal, plaintiff argues the trial court erred in interpreting the New Jersey Medical Care Access and Responsibility and Patients First Act (PFA), N.J.S.A. 2A:53A-37 to -42, and the case law interpreting the statute by holding Dr. Hofmeister could not opine as to the standard of care applicable to defendant. Plaintiff contends the court incorrectly focused on Dr. Hofmeister's "personal standard" rather than the "legal standard" set forth in the statute.

We exercise de novo review of a trial court's determination on compliance with the PFA. Wiggins v. Hackensack Meridian Health, 259 N.J. 562, 574 (2025). The Affidavit of Merit (AOM) statute, N.J.S.A. 2A:53A-27, requires a medical malpractice plaintiff furnish "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill[,] or knowledge exercised or exhibited in the treatment, practice[,] or work that is the subject of the complaint, fell outside acceptable professional or occupational

8

standards or treatment practices."  "The dual purposes of the AOM statute are 'to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court.'" Wiggins, 259 N.J. at 575 (quoting Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 150 (2003)).

The Legislature amended the AOM statute to incorporate additional requirements imposed by the PFA.  The PFA requires experts on the standard of care in medical malpractice cases to meet certain criteria.  If the defendant is a specialist "recognized by the [ABMS] or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by" either entity, the expert "shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, . . . as the party against whom or on whose behalf the testimony is offered." N.J.S.A. 2A:53A-41(a).  Also, if the defendant "is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the [ABMS] or the American Osteopathic Association, the expert witness shall be:"  credentialed by a hospital to treat patients with the same condition, or board certified in the same specialty as the defendant for the year preceding the incident giving rise to the underlying claim, and have devoted a majority of

professional time to either the active clinical practice of the same specialty as the defendant, teaching the same specialty as the defendant at an accredited medical school, or both. Ibid.

The PFA aims to ensure an expert in a medical malpractice case is "equivalently[ ]qualified" to the physician alleged to have departed from the standard of care. Wiggins, 259 N.J. at 575 (quoting Buck v. Henry, 207 N.J. 377, 389 (2011)). "The 'equivalently qualified' requirement is known as the 'kind-for-kind' rule." Ibid. (quoting Buck, 207 N.J. at 389). Notably, Buck held "[w]hen the treatment 'involves' the physician's specialty the equivalency requirements apply, otherwise the specialist is subject to the same affidavit requirements as if [they] were a general practitioner." 207 N.J. at 391. The Court observed, "[a] physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an affidavit of merit from a physician specializing in either area will suffice." Ibid.

In Pfannenstein v. Surrey, the defendants specialized in internal medicine at the time of treatment, and one was board certified in internal medicine. 475 N.J. Super. 83, 90 (App. Div. 2023). The plaintiff's expert was board certified in hematology, which she identified as "the subject matter involved in this

action." Id. at 91. She "did not indicate that she specialized in internal medicine or was board certified in that specialty." Id. at 92. Although the expert "was previously certified in internal medicine[, she] was not so certified at the time of the alleged malpractice." Id. at 93.

On appeal, we observed the ABMS recognizes internal medicine as a specialty and hematology as a subspecialty of internal medicine because internists "are trained in the diagnosis and treatment of cancer, infections[,] and diseases affecting the heart, blood, kidneys, joint[s,] and the digestive, respiratory[,] and vascular systems," as well as "the essentials of primary care internal medicine," including "effective treatment of common problems of the eyes, ears, skin, nervous system[,] and reproductive organs." Id. at 97 (third alteration in original) (quoting Am. Bd. of Med. Specialties, ABMS Guide to Medical Specialties 25 (2022) [hereinafter ABMS Guide], https://www.abms.org/wp-content/uploads/2021/12/ABMS-Guide-to-Medical-Specialties-2022.pdf.) "Hematology is a subspecialty" because it "'requires additional training and assessment as specified by the board.' A 'hematologist' is '[a]n internist . . . who specializes in diseases of the blood, spleen[,] and lymph,' and 'treats conditions such as anemia, clotting disorders, sickle cell

disease, hemophilia, leukemia, and lymphoma.'" Ibid. (first alteration and omission in original) (citation omitted) (quoting ABMS Guide, at 25, 27).

We reversed the trial court's ruling the AOM was sufficient because "the PFA's kind-for-kind specialty requirement embodied in N.J.S.A. 2A:53A-41(a) is not satisfied when the AOM's affiant specialized in a subspecialty of the treating doctor's specialty but did not specialize, nor was board certified, in the physician's specialty when the alleged medical negligence occurred." Id. at 90-91. The plaintiff's expert was barred because they "specialized in hematology" at the relevant time and "did not practice internal medicine." Id. at 102.

Wiggins involved whether the statutory requirements were satisfied when the expert, a board-certified internal medicine doctor, offered a standard of care opinion as to the defendants, who were specialists in both internal medicine and gastroenterology, and opined their treatment of the plaintiff involved both specialties. 259 N.J. at 569-70. We reversed the trial court's ruling the expert's qualifications were sufficient under the PFA. Id. at 572.

The Supreme Court reversed and held the expert's qualifications satisfied the statutory kind-for-kind requirement, because "when a defending physician practices in more than one specialty and the treatment involved falls within any of that physician's specialty areas, then an AOM from a physician specializing

in one of those specialties is sufficient under the statutes." Id. at 567. The defendant physician in Wiggins was board certified in internal medicine and the subspeciality of gastroenterology. Id. at 579. The Court observed:

> The plain language of N.J.S.A. 2A:53A-41 does not require an AOM to be from an individual with the same numerous specialties as the defending physician; instead, it requires only the same "specialty or subspecialty" in the singular (emphasis added).
>
> N.J.S.A. 2A:53A-41(a) also requires that the "care or treatment at issue involve[] [the defending physician's] specialty or subspecialty," not specialties or subspecialties.
>
> [Id. at 580 (alterations in original) (footnote omitted).]

The Court noted its holding was consistent with its precedent and comported "with the purposes underlying the AOM statute." Id. at 581-82. The Legislature had no interest in "barring meritorious claims brought in good faith" and "did not intend to create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims." Id. at 582 (quoting Buck, 207 N.J. at 393-94) (internal quotation marks omitted).

Applying these principles here, we must ask whether, like defendant, Dr. Hofmeister: was board certified in internal medicine in March 2017; and devoted a majority of his professional time to the active clinical practice of internal medicine from March 2016 to March 2017. The answer is clearly, yes.

13

Dr. Hofmeister certified he was board certified in internal medicine in the spring of 2017 and "[i]n the course of treating patients in 2016 through 2017, the majority of [his] professional time was spent as an internist diagnosing and treating [his] patients across the spectrum of internal medicine diseases including hypertension, diabetes, infectious diseases, skin problems, pain[,] and others." He "provided internal medicine care in addition to focused hematology care to [his] hematology patients" during the relevant time. At the hearing, he testified in "the year prior to the events at issue in this matter," he was practicing internal medicine, including treatment of "diseases such as hypertension, diabetes, infectious diseases, skin problems, [and] pain," and became "a primary care doctor, basically," for his patients with hematologic diseases. At the time of decedent's injury and death, Dr. Hofmeister was an Associate Professor of Clinical Internal Medicine, Division of Hematology, at Ohio State; not in a separate hematology department, as he later would be at Emory. Defendant did not dispute these facts.

The trial court's decision did not account for the contemporaneity requirement of the PFA or track the statutory requirements to detail where Dr. Hofmeister's credentials were lacking. Instead, the court focused on his more recent work in oncology and hematology at Emory and that he did "not hold

14

himself out as an internist." Notwithstanding Dr. Hofmeister's current practice, as regards the relevant time period relating to plaintiff's case, the overlap between internal medicine and hematology was permissible under the PFA. We do not read our caselaw as barring an overlap between a subspecialty and the more generalized specialty.

The trial court also focused on the fact Dr. Hofmeister had additional training as a hematologist. This was an erroneous consideration because it misinterpreted the kind-for-kind standard by treating greater training or qualifications as a demerit. We fear this rationale would "create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims" eschewed by the Supreme Court in Wiggins. 259 N.J. at 582. The Legislature intended the AOM and PFA to impose threshold requirements, but this should not result in the exclusion of an expert who has met the requirements of N.J.S.A. 2A:53A-41(a) and happens to have a higher level of expertise.

For these reasons, we reverse the trial court's ruling barring Dr. Hofmeister from offering an opinion on the standard of care as to defendant. We do not reach defendant's arguments on the appeal that because Dr. Hofmeister was barred from testifying, she was entitled to summary judgment,

and the trial court erred in allowing plaintiff to reopen discovery and procure an alternate expert, because they are moot.

The stay pending appeal imposed by the trial court is vacated. The appeal is dismissed as moot, and the cross-appeal is reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division