NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-3847-22

EARNEKA WIGGINS and LYNDA
MYERS, as administratrixes of the
estate of APRIL CARDEN,
deceased,

 Plaintiffs-Respondents,

v.

HACKENSACK MERIDIAN
HEALTH, d/b/a JFK UNIVERSITY
MEDICAL CENTER,

 Defendant-Respondent/
 Cross-Appellant,

and

ALOK GOYAL, M.D., and
SOUTH PLAINFIELD PRIMARY
CARE,

 Defendants-Appellants/
 Cross-Respondents.

<table>
<tr><td>APPROVED FOR PUBLICATION</td></tr>
<tr><td>April 18, 2024</td></tr>
<tr><td>APPELLATE DIVISION</td></tr>
</table>

Argued January 24, 2024 – Decided April 18, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from the Superior Court of New Jersey,
Law Division, Union County, Docket No. L-0005-23.

Richard J. Tamn, Jr., argued the cause for appellants/cross-respondents (Krompier & Tamn, LLC, attorneys; Richard J. Tamn, Jr., of counsel and on the brief; Jason Michael Altschul, on the brief).

Katelyn E. Cutinello argued the cause for respondent/cross-appellant (Cocca & Cutinello, LLP, attorneys; Anthony Cocca and Katelyn E. Cutinello, of counsel and on the brief).

Michael Scott Katz argued the cause for respondents Earneka Wiggins and Lynda Myers (Lopez McHugh, LLP, attorneys; Michael Scott Katz, on the brief).

The opinion of the court was delivered by

CURRIER, P.J.A.D.

On leave granted, in this medical negligence matter, we consider whether N.J.S.A. 2A:53A-41(a) under the New Jersey Medical Care Access and Responsibility and Patients First Act (Act), N.J.S.A. 2A:53A-37 to -42, requires plaintiffs to serve an affidavit of merit (AOM) from a physician board certified in both specialties if defendant physician is board certified in two specialties, and the treatment claimed to be negligent involves both specialties. Plaintiffs rely on Buck v. Henry, 207 N.J. 377 (2011), in asserting they need only provide an AOM from a physician who specializes in either of the defendant doctor's specialties. The trial court agreed and denied defendants' motions for dismissal of the complaint and reconsideration.

Because the facts presented here are distinguishable from Buck and the discrete ruling in Buck was not specific to this issue, and in considering the purpose of the Act, we conclude plaintiffs must serve an AOM from a physician board certified in each of defendant doctor's specialties. We are guided by the kind-for-kind, credential equivalency requirement articulated in N.J.S.A. 2A:53A-41(a) and the legislative purpose of the Act. Therefore, we reverse the court's order denying reconsideration. However, because plaintiffs raised the issue of a waiver from the AOM requirement, and the issue was fully briefed and discussed during oral argument before the trial court, we remand for the court to make a determination on the waiver issue.

I.

We derive our facts from the limited record before the trial court. In December 2015, defendant Alok Goyal, M.D., prescribed tramadol to decedent April Carden for pain associated with a medical condition. Dr. Goyal is employed by defendant South Plainfield Primary Care.[1] In January 2016, another doctor prescribed allopurinol for Carden. Plaintiffs allege Carden

---

[1] Dr. Goyal and South Plainfield Primary Care were represented by the same attorney. All pleadings were filed on behalf of both the doctor and the entity. We refer only to Dr. Goyal for the ease of the reader.

A-3847-22

suffered an allergic reaction from either medication or a combination of the two and was treated for Stevens-Johnson Syndrome[2] in 2016.

According to the complaint, Carden was treated for a blood clot at defendant Hackensack Meridien Health d/b/a JFK University Medical Center (JFK) in August 2020. She was discharged on September 3, 2020. Dr. Goyal prescribed allopurinol which Carden took from September 4 to 8. On September 9, Carden was admitted to JFK and treated for Stevens-Johnson Syndrome. She died on September 29, 2020, from cardiopulmonary arrest attributed to "multiple organ failure, bacteremia, and Stevens[-]Johnson Syndrome." Plaintiffs allege Carden's death was attributed to the usage of allopurinol.

Plaintiffs, as administratrices of Carden's estate, filed a complaint against defendants alleging Dr. Goyal breached the applicable standard of care and was negligent in his treatment of Carden, causing her injuries and death. The complaint described Dr. Goyal as a physician "specializing in the field of

---

[2] Stevens-Johnson Syndrome is a rare disorder most commonly caused by an adverse drug reaction; it "causes painful blisters and lesions on the skin and mucous membranes and can cause severe eye problems." Esen Karamursel Akpek, M.D., Stevens-Johnson Syndrome, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/stevens-johnson-syndrome (last visited Apr. 9, 2024).

internal medicine and gastroenterology." Plaintiffs asserted a claim of vicarious liability against JFK.

In answering the complaint, Dr. Goyal included a "specialty statement" stating: "At all relevant times, these defendants practiced the medical specialties of [i]nternal [m]edicine and [g]astroenterology and their treatment of plaintiffs' decedent involved the medical specialties of [i]nternal [m]edicine and [g]astroenterology."

Plaintiffs served an AOM against all defendants from Stella Jones Fitzgibbons, M.D., FACP, FHM.[3] Dr. Fitzgibbons, licensed in Texas, certified she was board certified in internal medicine, and practiced clinical internal medicine for the majority of her professional time in the year before the events leading to Carden's 2020 treatment and death. Dr. Fitzgibbons opined there was a "reasonable probability" that defendants' treatment of Carden deviated from "professional treatment standards."

Defendants objected to the AOM. Dr. Goyal sent plaintiffs' counsel a letter asserting that Dr. Fitzgibbons was not qualified to execute the AOM because she was only board certified in internal medicine, and not in both of Dr. Goyal's specialties. JFK objected to the AOM on the same grounds.

---

[3] FACP is Fellow of the American College of Physicians; FHM is Fellow in Hospital Medicine.

A-3847-22

The Essex County judge[4] conducted a Ferreira[5] conference in late November or early December 2022. There was no transcript of the hearing. The judge did not issue an order.

A.

In December 2022, Dr. Goyal moved to dismiss the complaint, asserting Dr. Fitzgibbons was not board certified in the same specialties as he was: internal medicine and gastroenterology. Therefore, the AOM was deficient under N.J.S.A. 2A:53A-41. Counsel certified plaintiffs had not requested a sixty-day extension during the Ferreira conference, or thereafter, to file a new AOM.

The supporting documentation included a certification from Dr. Goyal stating that he treated Carden as an internal medicine doctor and gastroenterologist and he was board certified in both specialties. He also listed specific medical conditions and treatment he provided or recommended to Carden and included a portion of Carden's medical records detailing his examinations and treatment from November 2016 to February 2020.

---

[4] The complaint was originally filed in Essex County.

[5] Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003).

On December 22, 2022, an Essex County judge granted JFK's motion to change venue and transferred the matter to Union County. Thereafter, JFK cross-moved for dismissal on the grounds that the AOM was deficient.

Plaintiffs opposed both motions and included a certification from Dr. Fitzgibbons stating that Dr. Goyal's medical records reflected he had prescribed allopurinol to Carden to treat high uric acid levels. Dr. Fitzgibbons certified that "[h]igh uric acid levels can cause gout or kidney stones," but those were not gastrointestinal conditions. The doctor stated she was unaware of any "gastrointestinal condition that is treated by allopurinol."

Plaintiffs also submitted a certification from Todd D. Eisner, M.D., a licensed physician in Florida who specialized in the field of gastroenterology. Dr. Eisner certified he "was asked to review this matter to see if the defendant gastroenterologist was negligent in his practice of gastroenterology. . . . [He] [was] familiar with the prescribing of allopurinol and [was] aware of no known gastrointestinal condition that is treated by allopurinol."

B.

During oral arguments on the motions in March 2023, the court directed plaintiffs' counsel to submit evidence of their efforts to acquire a

gastroenterology expert.[6]  Thereafter, plaintiffs' counsel submitted a "supplemental memorandum in support of responses to motions to dismiss complaint and counter motion for relief."  Counsel listed twelve gastroenterologists he "inquired upon" "to support" the case.

Counsel stated only two physicians provided certifications—one of which was from Dr. Eisner.  A second gastroenterologist—Stuart I. Finkel, M.D., stated he was asked to review the matter but "could not sign an [AOM] because [he] d[id] not have experience in the diagnosis or management of the conditions at issue, as there did not appear to be any [g]astrointestinal issues for [him] to consider."[7]

The supplemental memorandum then asserted plaintiffs met the criteria under N.J.S.A. 2A:53A-41(c) to obtain a waiver.  Counsel stated he asked for an exemption during oral argument and in a "counter-motion."  Counsel asserted "[p]laintiffs continue to formally request an exemption pursuant to [N.J.S.A.] 2A:53A-41(c), whether said request was found in their prior briefs,

_____

[6]  The record does not include the transcript of this oral argument.  However, the court referred to its request in its June 29, 2023 written statement of reasons accompanying the order denying reconsideration of the denial of defendants' dismissal motions.

[7]  Counsel also represented he had communication from a third gastroenterologist.  There is no certification from this doctor.  Therefore, we cannot consider this hearsay evidence.

or currently nunc pro tunc or by way of the instant document (formally titled a counter[-]motion)."

Plaintiffs' counsel contended the Essex County judge expressed her opinion during the Ferreira conference "that Dr. Goyal was NOT acting as a gastroenterologist at the time of treatment and that Dr. Goyal would have to produce an affidavit to that end to prove otherwise." Therefore, counsel stated he "followed the court's direction and . . . believed that this was not a case involving a gastroenterologist." Counsel explained that was why he did not file a formal motion requesting a waiver and asked the court to consider this "[c]ounter-[m]otion."

In April, the court requested additional briefing and held a second oral argument. We have not been apprised of the issues on which the court requested briefs, and were not provided with the transcript of the argument.

C.

On May 9, 2023, the court denied defendants' motions to dismiss the complaint. The court found that the Essex County judge "required Dr. Goyal to provide a certification that he prescribed [a]llopurinol in his capacity as a gastroenterologist." Therefore, plaintiffs "had a good faith belief to rely on [their] understanding . . . that Dr. Goyal had to provide a [c]ertification that he prescribed [a]llopurinol in his capacity as a gastroenterologist."

The court stated:

> [B]ased on all the circumstances, including the efforts by [p]laintiffs to identify a doctor who specialized as both a gastroenterologist and internist, taken together with [p]laintiffs' unrefuted position as to what transpired at the Ferreira conference, and in light of Dr. Goyal's 12/12/22 certification and its lack of specificity as to focusing on the treatment act of prescribing [a]llopurinol, . . . the "care and treatment at issue" was the prescribing of [a]llopurinol, and the "care or treatment at issue involves internal [medicine]."
>
> [(Last alteration in original) (quoting N.J.S.A. 2A:53A-41).]

The court then stated that "[a]lternatively," plaintiffs complied with the Act as delineated by the Supreme Court in Buck, but the court was not making a ruling on that basis. The trial court cited to two sentences from Buck: "A physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice." 207 N.J. at 391. Therefore, the trial court advised that Dr. Fitzgibbons's [AOM] was sufficient because she "specialize[d] in internal medicine—one of the two fields of Dr. Goyal's expertise." The court did not rule on whether plaintiffs demonstrated the requirements to establish a waiver of the requisite AOM. However, the court stated "it accept[ed]" plaintiffs' counsel made "good faith and honest" efforts to obtain an AOM from a gastroenterologist. The court

also noted that plaintiffs only filed opposition to the dismissal motions and did not file a cross-motion.

D.

Dr. Goyal moved for reconsideration. The submission included a certification from Meyer N. Solny, M.D., who was board certified in and practiced internal medicine and gastroenterology. Dr. Solny stated allopurinol was "not solely prescribed for internal medicine purposes." He certified "[t]he use of [a]llopurinol in gastroenterology [wa]s well-known" and gastroenterologists regularly prescribe it in their practices. Dr. Solny advised that "[a]ll treatment provided by a gastroenterologist necessarily involves knowledge of both [gastroenterology] and internal medicine." Therefore, "only another gastroenterologist possesses the knowledge, skill[,] and experience to identify the applicable standard of care of a gastroenterologist."

Dr. Goyal's counsel also submitted a certification stating he attended the Ferreira conference during which the Essex County judge "directed that the dispute be resolved via motion and indicated that in determining the motion she would want to see a [c]ertification from Dr. Goyal that his treatment involved gastroenterology." Therefore, counsel prepared a certification for Dr. Goyal's signature, "consistent with the [c]ertification requested by [the Essex County judge]." However, the case was subsequently transferred to Union

11                                                                    A-3847-22

County, and the Essex County judge never considered the dismissal motions. JFK cross-moved for reconsideration.

On June 29, 2023, the court denied defendants' motions for reconsideration. The court stated that the reference in Buck that "an [AOM] from a physician specializing in either area will suffice" "remain[ed] good law." The court explained it "made a finding that the care at issue in this case was one that involved internal medicine such that a [c]ertification from a gastroenterologist specialist is not needed." We granted defendants leave to appeal.

II.

On appeal, defendants contend the trial court erred in denying the motions for reconsideration because plaintiffs did not serve the required AOM under N.J.S.A. 2A:53A-41(a)(2). Under the statute's kind-for-kind requirement, the physician executing the AOM must be qualified in the specialties practiced by the defendant physician. Defendants further assert the trial court erroneously made a factual determination that Dr. Goyal prescribed allopurinol to Carden in his capacity as an internal medicine physician. In addition, any statement the Essex County judge may have made to the parties during the Ferreira conference was not a ruling on the merits and could not be used by plaintiffs to support their argument they satisfied the AOM

12                                                                    A-3847-22

requirement. Defendants contend the complaint must be dismissed with prejudice.

Our review of the court's order interpreting compliance with the Act is de novo. Meehan v. Antonellis, 226 N.J. 216, 230 (2016). However, we consider a trial court's denial of a motion for reconsideration under an abuse of discretion standard. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

A.

Under N.J.S.A. 2A:53A-26 to -29 (the AOM statute), a plaintiff in a medical malpractice action must "provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. The AOM must be served within sixty days of the defendant's filed answer. Ibid.

The court may grant the plaintiff one sixty-day extension to file the AOM.

Ibid.

The Act delineates the criteria required of the person executing the AOM. N.J.S.A. 2A:53A-41(a) states that if the defendant

> is a specialist or subspecialist recognized by the American Board of Medical Specialties . . . and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties . . . , the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties . . . , as the [defendant].

If the defendant

> is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties . . . , the expert witness shall be:
>
> > (1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or
> >
> > (2) a specialist or subspecialist recognized by the American Board of Medical Specialties . . . who is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties . . . , and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

14

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties . . . , the active clinical practice of that specialty or subspecialty recognized by the American Board of Medical Specialties . . . ; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties . . . , an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties . . . ; or

(c) both.

[Ibid.]

15

N.J.S.A. 2A:53A:41(b) details the requirements for a general practitioner.

In short, there are three categories of equivalency that satisfy the "kind-for-kind" requirement of N.J.S.A. 2A:53A-41:

> (1) those who are specialists in a field recognized by the American Board of Medical Specialties . . . but who are not board certified in that specialty; (2) those who are specialists in a field recognized by the [American Board of Medical Specialties] and who are board certified in that specialty; and (3) those who are "general practitioners."
>
> [Buck, 207 N.J. at 389.]

The second category, N.J.S.A. 2A:53A-41(a)(2), is the applicable section to the circumstances presented here.

Our Supreme Court first considered the kind-for-kind requirement under the Act as interpreted in Buck. There, after the defendant physician "diagnosed [the] plaintiff as suffering from . . . depression and insomnia," he prescribed sleep medication and an anti-depressant. Buck, 207 N.J. at 383-84. After taking the sleep medication, the "plaintiff fell asleep while inspecting a gun" and was woken up by what he thought was a phone call. Id. at 384. While reaching for his phone, he "somehow" put the gun into his mouth and discharged it, suffering permanent injuries. Ibid.

The plaintiff served an AOM executed by a licensed psychiatrist. Id. at 384-85. The defendant's counsel objected to the AOM, stating the defendant

16

was "engaged as a family practitioner." Id. at 385. The defendant's counsel requested a Ferreira conference, but the trial court mistakenly failed to schedule one. Ibid.

After consulting the website of the New Jersey Division of Consumer Affairs, the plaintiff learned the defendant was board certified in emergency medicine. Id. at 385-86. The court granted the plaintiff a sixty-day extension to obtain a new AOM. Id. at 385. Thereafter, the plaintiff served an AOM from a doctor that specialized in emergency medicine. Id. at 386.

The defendant moved for summary judgment, arguing the AOMs were not from equivalent physicians as required under the statute. Id. at 386-87. The defendant certified he practiced family medicine, and his care and treatment of the plaintiff involved his specialty of family medicine. Id. at 387. The trial court found the AOMs did not comply with the statute and dismissed the complaint with prejudice. Ibid. We affirmed. Id. at 388.

The Supreme Court reversed. Id. at 395-96. The Court reviewed the Act and stated that "[t]he basic principle behind N.J.S.A. 2A:53A-41 is that 'the challenging expert' who executes an [AOM] in a medical malpractice case, generally, should 'be equivalently-qualified to the defendant' physician." Id. at 389 (italicization omitted) (quoting Ryan v. Renny, 203 N.J. 37, 52 (2010)). The Court explained that N.J.S.A. 2A:53A-41 established "three distinct

categories embodying this kind-for-kind rule." Ibid. If the defendant doctor was a specialist, the court had to determine whether the treatment at issue involved the doctor's specialty. Id. at 391. The Court stated, "When the treatment 'involves' the physician's specialty the equivalency requirements apply . . . ." Ibid.

The Court continued, enunciating the sentences relied upon by plaintiffs and the trial court in this matter: "A physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice." Ibid. In support of this statement, the Court cited to the language in the statute that referred to a "person" or "witness" executing an affidavit in the singular. Ibid.

The Court also noted a trial court could "waive the specialty qualification requirements under specifically defined circumstances, but only 'upon motion by the party seeking a waiver.'" Id. at 390 (quoting N.J.S.A. 2A:53A-41(c)). The plaintiff had not made a waiver motion. Id. at 392-95. And in fact, the Court stated this was "not a case of a desperate plaintiff unable to find a physician willing to aver to a claim of malpractice." Id. at 395.

The Court reversed the judgment of dismissal and remanded to the trial court for a "case management conference and [to] decide anew the adequacy of

18

[the] plaintiff's [AOMs]." Ibid. The Court emphasized the importance of a Ferreira conference, stating "had . . . [a] conference been conducted, [the] plaintiff would have had at least thirty days to correct the deficiency by filing a conforming affidavit." Ibid.

The Court also established a new procedural requirement in a medical malpractice action, resulting in a revised Rule 4:5-3. Id. at 396. The Rule now provides that "[a] physician defending against a malpractice claim who admits to treating the plaintiff must include in his or her answer the field of medicine in which he or she specialized at that time . . . and whether his or her treatment of the plaintiff involved that specialty." R. 4:5-3.

Two years later, the Court again addressed the Act's kind-for-kind requirement in Nicholas v. Mynster, 213 N.J. 463, 480-88 (2013). There, the defendant Dr. Christopher Mynster, board certified in emergency medicine, and the defendant Dr. Rekha Sehgal, board certified in family medicine, treated the plaintiff Edward Nicholas for carbon monoxide poisoning. Id. at 468-69. After instituting suit against the defendant physicians (and others), the plaintiffs submitted an AOM from (1) a doctor board certified in internal medicine and preventive care with subspecialty certifications in pulmonary disease, critical care, and undersea and hyperbaric medicine; and (2) a doctor

19

who was board certified in internal medicine and was on the staff of a hospital's department of emergency medicine. Id. at 470-72.

The plaintiffs only served an expert report from the first doctor. Id. at 472. The defendants moved to bar the expert's testimony because he did not have the requisite credentials under N.J.S.A. 2A:53A-41 to attest "to the standard of care applicable to board-certified physicians in emergency . . . and family medicine." Id. at 473-74. The defendants also moved for summary judgment, because without the expert's testimony, the plaintiffs could not establish the applicable standard of care and could not sustain their claim. Id. at 474.

In considering N.J.S.A. 2A:53A-41(a), the Court cited to Buck and stated, "When a physician is a specialist and the basis of the malpractice action 'involves' the physician's specialty, the challenging expert must practice in the same specialty." Id. at 481-82. The Court added: "A medical expert must be a specialist in the same field in which the defendant physician specializes; there are no exceptions to that requirement other than the waiver provision of N.J.S.A. 2A:53A-41(c) . . . ." Id. at 482.

The Court rejected the plaintiffs' argument that a doctor credentialed to treat patients for a condition at a hospital did not need to practice that specialty and be board certified in it to meet the kind-for-kind requirement. Id. at 484.

The Court reiterated and concluded that "a physician specializing in internal and preventive medicine" could not "serve as an expert witness against a physician specializing in emergency or family medicine, even though each wa[s] qualified to treat a patient for carbon monoxide poisoning." Ibid. The Court cautioned that accepting the "plaintiffs' argument would lead back to the days before passage of the . . . Act when . . . physician experts of different medical specialties, but who treated similar maladies, could offer testimony even though not equivalently credentialed to defendant physicians." Id. at 485.

Most recently, in Pfannenstein ex rel. Est. of Pfannenstein v. Surrey, 475 N.J. Super. 83, 90-91 (App. Div.), certif. denied, 254 N.J. 517 (2023), this court held that the kind-for-kind requirement was not satisfied when the person who executed the AOM specialized in a subspecialty of the defendant physician's specialty but was not board certified and did not specialize in the defendant's specialty. We reasoned that the purpose behind the kind-for-kind "requirement would be undermined if a physician with such specialized training were permitted to opine regarding the standard of care applicable to a physician practicing in the more generalized specialty because the subspecialist no longer practices in the specialty." Id. at 102.

B.

Mindful of the legislative purpose of the Act and the applicable principles of law espoused in <u>Buck</u>, <u>Nicholas</u>, and <u>Pfannenstein</u>, we conclude the trial court erred in finding plaintiffs met the kind-for-kind specialty requirement when they only served an AOM from an internal medicine physician as to Dr. Goyal—a board-certified physician in two specialties.

The problems highlighted in <u>Buck</u> leading to the revised <u>Rule</u> 4:5-3 and a remand to the trial court are not present here. In answering the complaint, Dr. Goyal complied with the <u>Rule</u> and informed plaintiffs he practiced in the medical specialties of internal medicine and gastroenterology and his treatment of Carden involved both specialties.[8] Unlike in <u>Buck</u>, plaintiffs were immediately aware of Dr. Goyal's specialties. Nevertheless, plaintiffs only served an AOM from a board-certified internal medicine physician. Defendants instantly objected to the AOM.

The court appropriately held a <u>Ferreira</u> conference which achieved its designed purpose. Plaintiffs were again apprised of defendants' continued objections to the AOM and the reasons why. When the parties continued to disagree, the court instructed defendants to file a dismissal motion. They did

---

[8] Plaintiffs were apparently already aware of Dr. Goyal's credentials since the complaint describes him as "specializing in the field of internal medicine and gastroenterology."

so. Immediately thereafter, the matter was transferred to Union County. As a result, the Essex County judge did not consider defendants' dismissal motions and did not make any factual findings regarding the sufficiency of the AOM.

Nevertheless, when the Union County judge considered the dismissal motions, the judge made a finding that the Essex County judge directed Dr. Goyal to certify that his prescription of allopurinol was in his capacity as a gastroenterologist. But there was no basis for the judge to make such a finding. There was no transcript of the Ferreira conference, and the Essex County judge did not issue an order.

Any "direction" given by the Essex County judge was not a finding on the merits as there was no pending motion before the judge at the time of the conference. In addition, counsel for the parties submitted differing recollections of the Essex County judge's statements. Therefore, in ruling on the dismissal motions, the Union County judge mistakenly made an unsupported finding.

In addition, the Union County judge found Dr. Goyal's prescribing of allopurinol was "the 'care and treatment at issue' . . . and the 'care or treatment at issue involves internal [medicine].'" (alteration in original). This finding was also an error.

23

At the time of the court's ruling on the dismissal motions, the parties had submitted multiple certifications. Dr. Goyal certified he treated Carden as an internist and gastroenterologist. He produced medical records regarding his treatment.

In response, Dr. Fitzgibbons, an internist, certified that she was unaware of the use of allopurinol for any gastrointestinal issue. Plaintiffs' counsel also included a certification from Dr. Eisner which stated he was unaware of allopurinol's use for any gastrointestinal condition. After the first oral argument, plaintiffs submitted a new affidavit, from a doctor stating there "did not appear to be any [g]astrointestinal issues for [him] to consider." With this myriad of conflicting certifications before it, the Union County judge could not make a factual finding and erred in determining that Dr. Goyal only treated Carden as an internist.

This error could have been corrected by granting defendants' motion for reconsideration. Rule 4:42-2(b) permitted the earlier interlocutory order to be revised upon a showing of "sound discretion" and "in the interest of justice." With the reconsideration motion, Dr. Goyal included a certification from Dr. Solny who was board certified in internal medicine and gastroenterology. He certified allopurinol's treatment of gastroenterology issues was "well-known" and its prescription was "within the standard of care" of a gastroenterologist.

24

Further, he stated that "[a]ll treatment provided by a gastroenterologist necessarily involve[d] knowledge of both [gastroenterology] and internal medicine." Therefore, it was impossible for him to "bif[ur]cate and segregate [his] knowledge as a gastroenterologist from that as an internist."

With the presentation of yet another conflicting certification, the court could not support its factual findings as to what specialty Dr. Goyal was practicing when he prescribed allopurinol for Carden. The court mistakenly exercised its discretion when it denied the reconsideration motions.

C.

However, our analysis does not end there because the court made an alternative ruling, relying on the language in Buck that plaintiffs needed to only provide an AOM from an expert in one specialty even if defendant doctor specialized in two practices. Our careful reading of Buck and its progeny supports our conclusion that the language relied upon by plaintiffs and the trial court was dicta and not controlling in the circumstances presented here. Bandler v. Melillo, 443 N.J. Super. 203, 209-11 (App. Div. 2015). The central issue in Buck did not involve what AOM a plaintiff needed to serve in a case where a defendant physician specialized in two practice areas and was treating the plaintiff in both of those capacities.

25

If Dr. Fitzgibbons is permitted to be the only doctor serving an AOM, she—a lesser-qualified doctor than Dr. Goyal—is criticizing a higher-qualified physician's actions. That is not kind-for-kind credentialing as required under the Act. As the Court stated in Nicholas, the Act is viewed "as a framework in which only an equivalently credentialed specialist would be qualified to testify against another specialist." 213 N.J. at 483. Allowing plaintiffs to only submit Dr. Fitzgibbons's AOM contravenes the purpose of the Act. See Buck, 207 N.J. at 391 n.8 ("A physician board certified in a specialty can offer an [AOM] in a case involving a physician not board certified in that specialty. But under the equivalency doctrine, the reverse is not permitted." (citing N.J.S.A. 2A:53A-41)).

The Nicholas Court further explained: "The apparent objective of N.J.S.A. 2A:53A-41 is to ensure that, when a defendant physician is subject to a medical-malpractice action for treating a patient's condition falling within his [board-certified] specialty, a challenging plaintiff's expert, who is expounding on the standard of care, must practice in the same specialty." 213 N.J. at 486. In short, a plaintiff cannot choose the specialty that the defendant physician was practicing when treating the patient; the plaintiff must respond to the information provided by the doctor in the answer. As our role is to construe the meaning of a statute and enforce it as intended by the legislature, see

26

Wilson by Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012), we conclude plaintiffs' submission of only Dr. Fitzgibbons's AOM as an internist did not comply with the underlying purpose of the Act and did not suffice to support the continuation of the lawsuit.

D.

Because plaintiffs failed to present the statutorily required AOM and did not request an extension of time to do so, the complaint should have been dismissed with prejudice. However, plaintiffs contend they requested a waiver of the AOM requirement pursuant to N.J.S.A. 2A:53A-41(c). Defendants assert plaintiffs did not follow the procedure articulated under the statute to request a waiver and they cannot meet the statute's requirements for an exemption.

N.J.S.A. 2A:53A-41(c) provides that:

> A court may waive the same specialty or subspecialty . . . and . . . board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

A-3847-22

To obtain a waiver, a plaintiff must file a motion seeking the relief. Plaintiffs do not contend they requested a waiver during the Ferreira conference. Nor did plaintiffs ever file a formal motion. Ordinarily, that would end our discussion.

However, it is clear the waiver issue was discussed during several proceedings and in the parties' submissions. During oral arguments on the dismissal motions in March 2023, the court apparently directed plaintiffs' counsel to submit evidence of their efforts to acquire a gastroenterology expert. This indicates the issue was raised and the court was giving the parties the opportunity to formally address it. Thereafter, plaintiffs' counsel submitted a "supplemental memorandum in support of responses to motions to dismiss complaint and counter motion for relief." In that submission, counsel described efforts made to secure a new or second AOM and provided an affidavit from a gastroenterologist. Plaintiffs asserted they met the criteria under N.J.S.A. 2A:53A-41(c) to obtain a waiver. Defendant disagreed, arguing plaintiffs never made a formal motion for a waiver as required under the statute.

In its May 9, 2023 decision, the trial court acknowledged the waiver argument but did not address it since the court found Dr. Fitzgibbons's AOM satisfied the Act as discussed above. Although the waiver issue was raised

28

again in the reconsideration motions, the court stated it was a "moot" issue because of its ruling regarding the sufficiency of Dr. Fitzgibbons's AOM.

It is clear plaintiffs did not make a formal motion for a waiver. But the record reflects they raised the issue in opposition to the dismissal motions, and during oral argument on the motions. In response to the discussion, the court permitted supplemental briefing specifically as to plaintiffs' efforts "to acquire a gastroenterology expert." Thereafter, plaintiffs submitted a supplemental memorandum and a certification from an additional physician.

We cannot put form over substance here when the parties and the court discussed the waiver issue during two oral arguments, and the parties presented additional submissions with accompanying documents at the court's request. The issue was raised both during the consideration of the dismissal motions and the reconsideration of those motions. Although we do not abrogate the requirement for a formal motion under the statute,[9] the waiver issue was thoroughly addressed by the parties. Therefore, it should be considered on its merits.

---

[9] See Castello v. Wohler, 446 N.J. Super. 1, 11, 18-19 (App. Div. 2016) (finding that a plaintiff who requested a waiver in its opposition to the defendant's motion to disqualify an expert had not met the procedural requirements of N.J.S.A. 2A:53A-41(c) because "[a] party seeking a waiver must file a motion for that relief" and the plaintiff had only "informally asked" for a waiver).

We remand to the trial court to consider the parties' submissions on the waiver issue that had been filed with the court at the time it decided the reconsideration motions. The court may entertain oral argument at its discretion. The court shall consider the waiver statute and applicable caselaw, including Ryan, 203 N.J. at 54-61, and Pfannenstein, 475 N.J. Super. at 103-06, in making its determination. We do not opine on the merit of plaintiffs' arguments, the sufficiency of the submitted certifications or the outcome of the decision.

Reversed and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION