**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3516-22

MARGARET PIKE, executrix
of the Estate of JOHN LONG, and
MARGARET PIKE, individually,

    Plaintiffs-Appellants,

v.

RAFFAELE CORBISIERO, M.D.,
and DEBORAH HEART AND
LUNG CENTER,

    Defendants-Respondents,

and

MICHAEL ZALENSKI,
D.O., NICHOLAS E. ROY, D.O.,
CORINNE MIKLAS, D.O., and
JEFFERSON CHERRY HILL
HOSPITAL, i/j/s/a,

    Defendants.

_____

Submitted May 13, 2024 — Decided May 20, 2024

Before Judges Sabatino and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Civil Part, Burlington County, Docket No. L-1532-21.

Ginsberg & O'Connor, PC, attorneys for appellants (Gary D. Ginsberg, on the briefs).

Ronan, Tuzzio & Giannone, attorneys for respondents (Jennifer N. Cortopassi, of counsel and on the brief; Robert G. Maglio, on the briefs).

PER CURIAM

This medical malpractice appeal concerns the sufficiency of an affidavit of merit ("AOM") provided in a situation where a defendant physician's answer to the complaint identified a specialty and a subspecialty in which he was board certified at the time of a plaintiff's care and which he attests were both involved in the treatment, but where the plaintiff provided an AOM from a physician board certified in only one of the two credentials. As we discuss, this "kind-for-kind credentialing" question of law was addressed in this court's recent published opinion in Wiggins v. Hackensack Meridian Health, __ N.J. Super. __ (App. Div. 2024).

As we explain herein, Wiggins held that if a defendant physician has board certifications in two specialties or subspecialties at the relevant time and the allegedly negligent treatment involved both of those credentials, then a plaintiff is required to serve an AOM from a physician who is board certified in each of

defendant's specialties. We apply <u>Wiggins</u> to the present case, and affirm the trial court's dismissal of plaintiff's complaint for lack of an adequate AOM.

I.

The circumstances involve a medical malpractice complaint by decedent John Long's executrix Margaret Pike[1] against multiple medical professionals, including Rafaele Corbisiero, M.D., and the Deborah Heart and Lung Center. The other defendants have been dismissed from the case.

Defendants' answer stated that Dr. Corbisiero "specialized in [c]ardiovascular [d]isease and [c]linical [c]ardiac [e]lectrophysiology at the time that he rendered treatment to plaintiff, with such treatment involving cardiovascular disease <u>and</u> clinical cardiac electrophysiology." (Emphasis added).

Plaintiff timely filed an AOM from Bruce Charash, M.D., a board certified physician specializing in cardiology. Dr. Charash's AOM stated there was "a reasonable probability that the skill, care, and knowledge exercised by [Dr. Corbisiero], in the cardiac treatment of [plaintiff], fell outside accepted standards of medical care."

---

[1] For simplicity, we will generally refer to decedent as "plaintiff."

Defendants moved to dismiss the complaint for failure to comply with the New Jersey Medical Care Access and Responsibility and Patients First Act ("PFA"), N.J.S.A. 2A:53A-37 to -42. The motion asserted that "[a]s set forth in the Answer, [Dr. Corbisiero] is board certified in Cardiovascular Disease and Clinical Cardiac Electrophysiology." It noted that the plaintiff's AOM came from Dr. Charash, "a board certified Cardiologist [who did] not practice in electrophysiology" and who therefore was "unqualified to render an AOM against Dr. Corbisiero." Defendants further asserted that they "advised plaintiff as such, and plaintiff advised it is [plaintiff's] position that the AOM authored by Dr. Charash is compliant since the [alleged] negligence pertains to cardiology."

After initially hearing oral argument on the dismissal motion, the trial court instructed plaintiff to obtain a certification from Dr. Charash explaining further his opinion about the appropriate specialties or subspecialties involved in plaintiff's care. Plaintiff filed the requested certification from Dr. Charash. It stated that "[t]his case [wa]s about improper dosing of Amiodarone based on [plaintiff's] presentation of atrial fibrillation." The certification further elaborated that "[a]s a cardiologist, [Dr. Charash] deal[s] with atrial fibrillation on a daily basis and manage[s] arrhythmias which includes the prescribing of

Amiodarone which is kind of basic cardiology." Finally, the certification maintained that the "case d[id] not involve any of the[] issues" that "[a]n electrophysiologist has the ability to perform," nor the "training and experience" to deal with.

Upon reviewing Dr. Charash's certification, the trial court entered an order denying defendants' motion to dismiss on December 2, 2022. However, defendants moved for reconsideration and persuaded the trial court to reverse its decision, based on newly decided case law, specifically Pfannenstein ex rel. Estate of Pfannenstein v. Surrey, 475 N.J. Super. 83 (App. Div. 2023), certif. denied, 254 N.J. 517 (2023) (holding that an AOM from a physician who specialized in hematology did not satisfy the PFA's kind-for-kind specialty requirement, since the defendant physician specialized in internal medicine).

On reconsideration, the trial court, applying Pfannenstein, determined that the defendant physician's subspeciality of clinical cardiac electrophysiology was involved in plaintiff's treatment, not cardiology, and ordered plaintiff to submit an AOM from a physician who is board certified in clinical cardiac electrophysiology. When counsel failed to submit the required AOM and informed the trial court that plaintiff would not be filing one, the court dismissed the complaint.

Plaintiff now appeals the reconsideration ruling. Plaintiff is steadfast in asserting that the AOM from his expert cardiologist suffices, since defendant physician's other subspecialty of clinical cardiac electrophysiology is allegedly irrelevant. Alternatively, even if both subspecialities were involved, plaintiff asserts the AOM is sufficient because both the defendant physician and the AOM physician are board certified in cardiology.

## II.

The PSA prescribes, in pertinent part, as follows:

> In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of P.L. 1995, c.139 (C.2A:53A-26 et seq.) on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:
>
> > a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the

party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the expert witness shall be:

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, the active clinical practice of that specialty or subspecialty recognized by the

7

American Board of Medical Specialties or the American Osteopathic Association; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(c) both.

. . . .

c. A court may waive the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association and board certification requirements of this section, upon motion by the party seeking a waiver, if, after the moving party has demonstrated to the satisfaction of the court that a good faith effort has been made to identify an expert in the same specialty or subspecialty, the court determines that the expert possesses

8

sufficient training, experience and knowledge to provide the testimony as a result of active involvement in, or full-time teaching of, medicine in the applicable area of practice or a related field of medicine.

[N.J.S.A. 2A:53A-41(a)-(c) (emphasis added).]

We most recently applied the PFA in Wiggins, which involved an AOM from a physician who was only board certified in internal medicine, even though the defendant physician was certified in both internal medicine and gastroenterology. The defendant's answer attested the plaintiff's care involved both specialties.

We held in Wiggins that where "the treatment claimed to be negligent involves both specialties," "plaintiffs must serve an AOM from a physician board certified in each of defendant doctor's specialties." __ N.J. Super. at __. We addressed the plaintiff's reliance on language from the Supreme Court in Buck v. Henry, 207 N.J. 377, 391 (2011), which stated: "A physician may practice in more than one specialty, and the treatment involved may fall within that physician's multiple specialty areas. In that case, an [AOM] from a physician specializing in either area will suffice." Ibid. (emphasis added). However, Wiggins reasoned that its "careful reading of Buck and its progeny support[ed] [its] conclusion that the language relied upon by plaintiffs and the

trial court [which we have underscored above] was dicta and not controlling in the circumstances presented." Id. at 25.

Wiggins noted that allowing plaintiffs to submit only the AOM issued by a physician specializing in just one of multiple specialties of a defendant physician would "contravene[] the purpose of the [PFA]" because the Supreme Court views the statute "'as a framework in which only an equivalently credentialed specialist would be qualified to testify against another specialist.'" Id. at 26 (emphasis added) (first citing Buck, 207 N.J. at 391 n.8; and then quoting Nicholas v. Mynster, 213 N.J. 463, 483 (2013)). "In short, a plaintiff cannot choose the specialty that the defendant physician was practicing when treating the patient; the plaintiff must respond to the information provided by the doctor in the answer." Ibid.[2]

After the opinion in Wiggins was issued, we invited counsel to submit supplemental briefs addressing its implications for this case, particularly considering plaintiff's reliance on the same language from Buck that Wiggins found to be mere dicta. Defense counsel submitted a supplemental brief asserting that Wiggins clearly supports dismissal here.

---

[2] As of this time, the plaintiff in Wiggins has not sought Supreme Court review of our decision.

A-3516-22

Plaintiff, meanwhile, asserted in a supplemental brief that Wiggins incorrectly decided the issue by "fail[ing] to follow[] the principles set forth in Buck" and "the plain language of N.J.S.A. 2A:53A-41." Plaintiff contends the relevant passage in Buck was not dicta and Wiggins would require the Supreme Court "to disavow itself from its own statement." Plaintiff also contends, tracking the language of N.J.S.A. 2A:53A-41, that an expert need only specialize in the same specialty or subspecialty of the defendant, which Dr. Charash does, so the AOM is compliant with the statute.

We reject plaintiff's attempt to distinguish Wiggins. The plain language of the PFA does not state, as plaintiff argues, that a plaintiff's AOM affiant does not have to specialize in each subspecialty practiced by a defendant physician that is involved in the plaintiff's care and treatment. The statute recognizes that multiple specialties or subspecialties can be involved in a plaintiff's care, and that the AOM physician's credentials must match the specialties or subspecialties that were involved.[3]

---

[3] Notably, plaintiff did not opt to invoke the "waiver" portion of the statute that allows a plaintiff to seek relief from the court when no licensed professional can be located who has the requisite specialty to supply an AOM, N.J.S.A. 2A:53A-41(c).

A-3516-22

We are mindful the trial court was presented with conflicting assertions by Dr. Corbisiero and Dr. Charash disputing whether plaintiff's care did or did not involve the specialty (or subspecialty) of clinical cardiac electrophysiology. The Supreme Court's jurisprudence to date has not addressed how a trial court should resolve such a factual dispute. Buck identified as the court's "second inquiry" "whether the treatment that is the basis of the malpractice action 'involves' the physician's specialty." 207 N.J. at 391. But the Court had no occasion to resolve the appropriate process that should be undertaken where, as here, there are conflicting submissions about the specialty "involved" provided by a defendant physician and the AOM affiant.

It might be posited that a plenary hearing with testimony from the competing experts, deposition transcripts, or other evidence would be beneficial to ascertain the truly "involved" specialties or subspecialties. See, e.g., State v. Gaitan, 209 N.J. 339, 381 (2012) (noting the potential necessity of an evidentiary hearing to resolve "competing affidavits" about critical facts). On the other hand, such a plenary hearing could undercut the objectives of the PFA and the AOM process to screen out, at the early stages of litigation without undue expense, unmeritorious claims of professional malpractice. See Buck, 207 N.J. at 393-94.

12

In the absence of a Supreme Court opinion or directive requiring such a plenary hearing, we decline to remand for that purpose. The trial court's decision did not run afoul of existing precedent, and there are at least substantial, albeit not uncontested, grounds in the record to support the court's determination of the "involved" subspecialty.

Putting aside the AOM affiant's disagreement, there is no indication that Dr. Corbisiero's assertion of his subspecialty's involvement in plaintiff's care was misleading or unfounded. Nor was plaintiff deprived of a Ferreira conference to attempt to resolve the issue. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154 (2003); see also Buck, 207 N.J. at 394-95.

Given these circumstances, we must apply the precedents in Wiggins and Pfannenstein and uphold the trial court's ruling that the AOM supplied by plaintiff failed to meet the statute's "kind-for-kind" credentialing requirement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3516-22